THOMAS E. FRENCH, PLAINTIFF IN ERROR, v. THOMAS ROBB, EXECUTOR, DEFENDANT IN ERROR.

Submitted December 10, 1901.—Decided March 3, 1902.

1. In an action of ejectment for land occupied by the defendant, a plea of not guilty admits such possession as excludes the plaintiff.
2. The owner of the soil in a street may maintain ejectment against any person wrongfully taking or claiming exclusive possession of the same.
3. A person occupying part of a street with poles and appliances for lighting the street, in pursuance of a contract made with the municipal authorities under the act of May 22d, 1894 (*Pamph. L.*, *p.* 477), has such rightful exclusive possession of the part so occupied as will support a plea of not guilty in an action of ejectment brought by the owner of the soil.
4. But the right of such a person to use the street in the immediate vicinity of his poles and appliances for the purpose of maintaining them, is not capable of supporting such a plea.
5. If a person who has rightfully placed poles and wires in a street for the purpose of lighting the street, uses them wrongfully for private lighting, he does not thereby lose his right to maintain them as against the owner of the soil.

On error to the Supreme Court.

For the plaintiff in error, *Samuel H. Richards.*

For the defendant in error, *James M. E. Hildreth.*

The opinion of the court was delivered by

DIXON, J.   The plaintiff brought an action of ejectment, in the Supreme Court, against the Delaware and Atlantic Telegraph and Telephone Company, Joseph Q. Williams, receiver of the Franklin Electric Light Company, and Thomas Robb, executor of William O. Robb, deceased, for the possession of a plot of land five feet square within the limits of Washington and Jefferson streets in the city of Cape May. The receiver did not plead, but the telegraph company and Robb each pleaded "not guilty."   At the trial in the Cape May Circuit of the issues thus raised the facts appeared as

follows: The plaintiff, as owner of the land abutting upon the streets, owned also the *locus in quo,* subject to the public easement; under an ordinance and a contract between the city of Cape May and the Franklin Electric Light Company, dated November 30th, 1897, and running to July 23d, 1902, the company became bound to light the streets of the city with electricity and to furnish, erect and maintain all necessary poles, wires, &c., the location and erection of the appliances in the streets being subject to the approval of the city council; accordingly a pole was placed about the centre of the *locus in quo* and wires strung thereon; in June, 1899, the electric company had passed into the hands of a receiver, and, the pole being then in poor condition, the receiver permitted the telegraph company to erect a new pole in its stead and to string thereon a telephone wire, the pole, however, to be the property of the electric company; afterwards, by virtue of an order of the Court of Chancery, the plant of the electric company was turned over by the receiver to the defendant Robb, and when this suit was brought he was carrying out the contract with the city for lighting the streets, and for that purpose he was in possession and use of the pole and some of the wires; other wires on the pole were used by him for private lighting, and the telegraph company was using its wire for telephone purposes. On this state of facts the trial court directed a verdict for the plaintiff against the telegraph company, of which no complaint is now made; and also directed a verdict in favor of Robb for so much of the land as was occupied by the pole, and instructed the jury to find further in his favor for so much of the land around the pole as they should think reasonably necessary to be used in maintaining and taking care of the pole. To such direction and instruction the plaintiff excepted, and the jury having found Robb not guilty, the plaintiff seeks to reverse the consequent judgment.

Before considering the special aspects of the controversy, it may be helpful to advert to the real nature of an action of ejectment.

Originally it was designed to recover only damages for the wrongful ejection of the plaintiff from the possession of land in which he had a term of years; later the recovery was extended to the possession of the land. To succeed, the plaintiff was required to prove a lease to himself for a term of years, made by a lessor entitled to the possession and on the land when the lease was made, his entry under the lease, and ouster by the defendant. The action was usually instituted against a person not interested in the land, called the casual ejector, who gave notice of the suit to the actual possessor, and he, on application to the court, was substituted as defendant. But, as a condition of such substitution, the court required him to stipulate that at the trial he would confess the lease, entry and ouster alleged by the plaintiff, thus leaving the only fact to be proved by the plaintiff the title of his lessor. If, however, the claim of the applicant was such as would not warrant him in ousting the plaintiff, and yet would justify his own possession, as if he claimed only as joint tenant with the lessor, then he stipulated to confess ouster of the plaintiff only in case the plaintiff should prove actual ouster of the lessor. If at the trial the plaintiff showed such title in his lessor as made the confessed ouster wrongful, or if, when ouster was only conditionally confessed, he showed an actual ouster of the lessor, or a title against which any possession by the defendant was wrongful, then he recovered damages and possession; otherwise his suit failed. Thus the technical issue in the case was always whether the defendant had wrongfully ousted the plaintiff.

Under our statute the technical issue remains the same, although presented by a different procedure. The real claimant, the old lessor, is the plaintiff, and his complaint is that the defendant wrongfully deprives him of possession. The defendant is the real counter-claimant, and if he means to defend absolutely he pleads not guilty, and by that plea admits a possession or claim of title which should exclude or oust the plaintiff; while if he means to defend only for a possession or claim of title which does not exclude the plaintiff—e. g., as joint tenant with him—he must give notice with

his plea that he admits the right of the plaintiff to an undivided share of the land and denies actual ouster. *Brown* v. *Combes*, 5 *Dutcher* 36. Then if, at the trial, on the simple plea, the plaintiff shows a title against which the defendant's *exclusive* possession or claim would be wrongful, or, on the plea and notice, he shows an actual ouster wrongful in view of his admitted right, or a greater right which makes the defendant's possession a wrongful ouster, the plaintiff will be entitled to judgment, otherwise not.

In the present case, the *locus in quo* being within the limits of public streets, a preliminary question arises, whether the plaintiff, as owner of the soil, has such a right of possession as is capable of supporting the action of ejectment. In *Cincinnati* v. *White's Lessees*, 6 *Pet.* 431, Mr. Justice Thompson urged, with much force, the negative of this query; but in New Jersey the affirmative must be regarded as settled by the decision of this court, reversing the judgment of the Supreme Court, in *Wright* v. *Carter*, 3 *Dutcher* 76. See 5 *Vroom* 207; 27 *Id.* 288.

The plea of the defendant Robb is simply "not guilty"— *i. e.*, that he has a possession or claim which rightly excludes the owner of the soil.

It is established, by express decision, in this state that the public corporation, which represents the public right to the use of streets, may maintain ejectment against any person, even the owner of the soil, who occupies a street in a manner inconsistent with the public use. *Hoboken Land and Improvement Co.* v. *Hoboken*, 7 *Vroom* 540. From this it logically follows that the owner of the soil cannot maintain ejectment against such public corporation occupying the street within the limits of the public right. This was so adjudged by the Federal Supreme Court, in *Cincinnati* v. *White's Lessees*, 6 *Pet.* 431, and *Barclay* v. *Howell's Lessees, Id.* 498, cases which are cited, with evident approval, by Mr. Justice Depue, in *Hoboken Land and Improvement Co.* v. *Hoboken, ubi supra.* The same exemption from successful attack must be conceded to the agencies through which the public corporation exercises its rights, whether those agencies be designated by

employment or by contract, for its rights would be fruitless if they could not be used to protect the individuals through whom they may be lawfully exercised and without whose intervention the corporation could not enjoy them.

One of the rights belonging to the corporation is to occupy the streets with poles and wires for public lighting. This right was expressly conferred by the act of May 22d, 1894 (*Pamph. L., p.* 477), according to which it may be exercised either directly by the city itself or indirectly through parties contracting with the city, and is not conditioned upon consent of the owner of the soil. *Meyers* v. *Electric Co.,* 34 *Vroom* 573. When the contract under which Robb claims was made this statute was in complete force, and although "An act concerning townships," approved March 24th, 1899 (*Pamph. L., pp.* 372, 476), attempts to repeal it, yet, as the title of this act limits its operation to townships, the statute still remains effective in cities.

So far, therefore, as Robb occupied the streets with poles and other appliances for public lighting, and thereby excluded the plaintiff, the ouster was not tortious, and a verdict of not guilty was properly directed.

But the defendant pleaded not guilty for the entire *locus in quo,* and we must consider whether, outside of the space occupied by these appliances for public lighting, he has shown a right to the exclusive possession which his plea sets up.

No color of right is shown for maintaining apparatus for private lighting, and as to the wire strung for that purpose the defendant was clearly guilty. The plaintiff urges that the wrongful use of the pole to sustain this wire should be visited with the forfeiture of the entire right; but we find no ground for such contention. Such a judgment would inflict a loss upon the public for the private fault of one of its instruments. The plaintiff does not need such rigor for his protection. So far as the appliances are not used for public purposes, this suit will result in abating them; so far as those required for public purposes have been wrongfully used, the plaintiff can be compensated by an action on the case for damages, and equity will restrain their misuse in the future.

There remains for consideration the defendant's claim to the land around the pole and appliances, found by the jury to be necessary for his use in maintaining them.

The right to use that land for such a purpose did not justify the exclusive possession admitted by the plea. It was only the right enjoyed by every member of the community while in actual use of the street. It was discontinuous, and lacked the permanent and exclusive characteristics which are nécessary to support or defend an action of ejectment. As a personal right it was, in essence, like a private right of way, which cannot constitute a defence in an action of ejectment brought by the owner of the soil. *Burnet* v. *Crane*, *27 Vroom* 285.

The proper conduct of the trial at the Circuit required a verdict that the defendant Robb was not guilty as to that part of the *locus in quo* which was actually occupied by the pole and other appliances used for public lighting, and that as to the residue he was guilty.

The present judgment should be reversed and a *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, VAN SYCKEL, DIXON, GARRISON, COLLINS, FORT, GARRETSON, PITNEY, KRUEGER, ADAMS, VREDENBURGH, VOORHEES, VROOM. 14.